IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| EDDIE MOORE,  #247087, ) | Civil Action No. 3:10-3041-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JON OZMINT, DIRECTOR OF SCDC; ) | |
| J. BRYANT DIEHL, CANTEEN MANAGER; ) | **ORDER** |
| RUSSELL CAMPBELL, FORMER DIRECTOR ) | **AND** |
| OF HEALTH SERVICES; ) | **REPORT AND RECOMMENDATION** |
| JOHN SOLOMON, PRESENT DIRECTOR OF ) | |
| HEALTH SERVICES; ) | |
| ROBERT M. STEVENSON, WARDEN, SUED IN ) | |
| THEIR INDIVIDUAL AND OFFICIAL ) | |
| CAPACITIES; ) | |
| EVELN BARBER, FOOD SERVICE ) | |
| MANAGER; AND ) | |
| ALLEN COLLINS, FORMER SERVICE ) | |
| MANAGER, SUED IN THEIR INDIVIDUAL ) | |
| CAPACITIES ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, Eddie Moore, filed this action pro se on November 30, 2010.[1]  He filed an amended

complaint on February 10, 2011.  Plaintiff appears to allege, pursuant to 42 U.S.C. § 1983 ("§ 1983"),

that Defendants violated his constitutional rights.  He also appears to allege claims under the

Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA"), and claims under

South Carolina law.  At the time of the alleged incidents, Plaintiff was an inmate at the Broad River

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) and (e) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

Correctional Institution ("BRCI") of the South Carolina Department of Corrections ("SCDC"). He has since been released from SCDC custody.

On August 24, 2011, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on August 25, 2011 pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Defendants filed additional documents and supplementation of their motion for summary judgment on August 31, and September 6, 2011. See Docs. 84 and 89. On September 26, 2011, the undersigned granted Plaintiff's extension of time to respond to Defendants' motion for summary judgment, extending the time until November 7, 2011. On November 1, 2011, the time for Plaintiff to respond to Defendants' motion for summary judgment was extended until December 12, 2011. On November 21, 2011, Defendants filed a supplemental motion for summary judgment. A second Roseboro order was issued the same day. Plaintiff filed a response to Defendants' motion for summary judgment and his own motion for partial summary judgment on December 9, 2011. Defendants filed a response on December 22, 2011. On December 20, 2011, the undersigned granted an extension of time, until January 12, 2012, for Plaintiff to file any response in opposition to Defendants' motion for summary judgment and supplemental motion for summary judgment. See Doc. 105. On January 27, 2012, Plaintiff filed a response and a motion to amend.

## MOTIONS FOR PRELIMINARY INJUNCTIONS

On May 18, 2011, Plaintiff filed a motion requesting a temporary restraining order ("TRO") and preliminary injunction "to ensure he receive[s] proper food/diet and is not discriminated against in violation of [the RA and the ADA], and to stop the price gouging of a citizen of both the U.S. and

South Carolina." Defendants, in a response filed June 1, 2011, argue that Plaintiff's motion should be denied because it is duplicative of his amended complaint such that he is seeking an interlocutory ruling on his causes of action. They also argue that Plaintiff failed to properly exhaust his available administrative remedies as to his claims. Additionally, Defendants argue that Plaintiff fails to demonstrate that he will suffer some irreparable harm in the absence of the injunctive relief he seeks, he has not shown that there is a likelihood of success on the merits of his claims, he fails to show that the public interest will be promoted by granting the requested injunctive relief, and he fails to show that the alleged harm against him is actual and imminent.

On July 19, 2011, the undersigned recommended that Plaintiff's motion for a preliminary injunction be denied. That same day, Plaintiff filed a motion to amend/correct his motion, and filed a second motion to amend/correct his motion on August 22, 2011. On September 1, 2011, the Honorable R. Bryan Harwell, United States District Judge, declined to adopt the recommendation in light of Plaintiff's motions to amend. The motion was recommitted to the undersigned.

Plaintiff's motions to amend also appear to be motions for TROs and for preliminary injunctions. He appears to assert that an injunction should be issued to prevent discrimination under Title II of the ADA, and to order that he be allowed to work in the prison cafeteria as well as being housed in a lower level custody facility. **Plaintiff's motions to amend (67 and 79) and for TROs/preliminary injunctions are granted, in part, to the extent that he is requesting that his May 18, 2011 motion for a TRO/preliminary injunction be amended**. To the extent that Plaintiff is asking that the motions for TROs/preliminary injunctions be granted, it is recommended that these motions be denied for the reasons discussed below.

3

Plaintiff's motions and amended motions for TROs/preliminary injunctions appear to be motions for preliminary injunctions.[2] As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. Id. at 376. Similarly, the plaintiff must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. Id. at 374–76.

As Plaintiff has been released from SCDC custody, his requests for preliminary injunctive relief are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."). Plaintiff also fails to show that he is entitled to relief under the factors set out in Winter. He is unlikely to be successful in the underlying dispute, as discussed below. As Plaintiff has been released from SCDC custody, he also fails to show that he will suffer irreparable injury if he is not granted a preliminary injunction. He has also not shown that an injunction is in the public interest. Plaintiff merely argues that it is in the public interest for prison officials to obey the law. He, however, has not presented anything other than his own opinion that Defendants failed to do so. Thus, it is recommended that Plaintiff's motions and amended motions for TROs/preliminary injunctions be denied.

---

[2]To the extent that Plaintiff's motion or amended motions are motions pursuant to Rule 65(b) for TROs, it is recommended that the motions be denied because Plaintiff has not shown specific facts which "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition." Fed. R. Civ. P. 65(b).

## MOTIONS FOR SUMMARY JUDGMENT

In his amended complaint, Plaintiff alleges that inmates who have tested positively for HIV are discriminated against as to their housing and work assignments; he is served inadequate, non-nutritious, and tainted food which he is given inadequate time to eat; and Defendants have conspired to raise canteen prices, prevent him from working in the cafeteria, and prevent him from receiving adequate food. In his motion for partial summary judgment, Plaintiff argues that there are genuine issues of material fact such that Defendants' motion for summary judgment should be denied. He argues, however, that he should be granted partial summary judgment because he no longer has to show a physical injury to be awarded damages on a claim of mental or emotional injury as he is no longer incarcerated, and Defendants knew of ADA violations. Defendants contend that their motion for summary judgment should be granted because: (1) some of Plaintiff's claims are barred by the applicable statute of limitations; (2) they are entitled to Eleventh Amendment immunity; (3) they are entitled to qualified immunity; (4) Plaintiff failed to exhaust his administrative remedies; (5) Plaintiff does not have a constitutional right to canteen items or canteen privileges; (6) Plaintiff fails to state a claim under the Sherman Anti-Trust Act, 15 U.S.C. § 1, et seq.; (7) Plaintiff fails to establish a conspiracy claim under § 1983; (8) Plaintiff fails to state a cause of action under the ADA or the RA; (9) Plaintiff does not have a liberty interest in his custody or prison placement; (10) Plaintiff fails to state a constitutional violation as to his prison job; (11) Plaintiff fails to show that his Eighth Amendment rights were violated as to his conditions of confinement; (12) Plaintiff fails to show that Defendants were deliberately indifferent to any of his medical needs; (13) Plaintiff fails to show that his equal protection rights were violated; (14) any claims for mental or emotional injuries must be dismissed; (15) Plaintiff fails to set forth any facts sufficient to constitute a cause

of action under state law; (16) any state law claims are barred by the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-70 to 15-78-200; and (17) Defendants cannot be held liable on a theory of respondeat superior.[3] In their supplemental motion for summary judgment, Defendants contend that this action should be dismissed because Plaintiff has been released from incarceration, thus rendering his claims for injunctive and declaratory relief moot.[4]

1.    Standard of Review

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3]The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982).

[4]Plaintiff may be attempting to assert a claim for retaliation because he believes he may be retaliated against in the future. He has, however, provided nothing to support his allegations. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc)(citing Adams, 40 F.3d at 74).

56(a).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences

to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.

Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  The moving party "bears the initial burden

of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County

Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986)).  If the moving party carries this burden, "the burden then shifts to the non-moving party to

come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson,

477 U.S. at 247-48).

        2.       Statute of Limitations

       Defendants contend that most if not all of Plaintiff's claims are barred by the

applicable statutes of limitations.  State law concerning limitation of actions applies in claims brought

under § 1983.  See Wilson v. Garcia, 471 U.S. 261, 266 (1985); see also Burnett v. Grattan, 468 U.S.

42 (1984); Owens v. Okure, 488 U.S. 235 (1989).  In South Carolina, the statute of limitations is

generally three years.  See  S.C. Code Ann. § 15-3-530.  Thus, any of Plaintiff's  § 1983 and state

law claims that arose before November 30, 2007 (or more than three years prior to the November 30,

2010 filing of this action) are barred by the applicable statute of limitations.

        3.       Injunctive and Declaratory Relief

       As Plaintiff has been released from SCDC custody, his requests for preliminary

injunctive relief are moot.  See Williams v. Griffin, 952 F.2d at 823; Magee v. Waters, 810 F.2d 451,

452 (4th Cir.1987)(prisoner's transfer moots his request for injunctive relief against conditions of

confinement in facility from which he was transferred).

4.    Exhaustion of Administrative Remedies

Defendants contend that Plaintiff's claims are barred because he failed to exhaust his available administrative remedies.  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's ("PLRA"), 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.  The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant.  That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies."  Id. at 683.

A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation.  Exhaustion is a prerequisite to suit that must be completed prior to filing an action.  See Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d at 677, see also Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled

on other grounds by <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Jackson v. Dist. of Columbia</u>, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir.1999) (An inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.); <u>Perez v. Wisconsin Dep't of Corr.</u>, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Ann Hallman, the Branch Chief of Inmate Grievances with SCDC, states that she has reviewed the SCDC inmate grievance records concerning Plaintiff. She states that Plaintiff filed over seventy grievances with the SCDC and three of these grievances referenced the food or meals Plaintiff received. Hallman states that one of the grievances was denied at the Step 1 level and was not appealed, two were unprocessed (one because it addressed more than one issue in the grievance and one because it was a class action) and were not appealed. She also states that one of Plaintiff's grievances, filed on March 17, 2011 (after the filing of this lawsuit) has yet to be processed. Hallman states that Plaintiff has not filed any grievances related to the canteen or commissary, nor as to the SCDC housing policy for HIV/AIDS inmates within BRCI. Hallman Aff.

Only after completing both Steps 1 and 2 of the SCDC grievance policy has an inmate properly exhausted his claims under § 1983. See <u>Malik v. Ward</u>, No. 8:08-1886-RBH-BHH, 2010 WL 1010023, at *6 (D.S.C. Feb. 4, 2010). Thus, Defendants have presented evidence that Plaintiff

9

failed to exhaust his available remedies as to the food he received at SCDC, concerning the canteen or commissary and its prices, and as to the housing policy for AIDS/HIV inmates at SCDC. Plaintiff fails to present anything to dispute this. Therefore, Defendants are entitled to dismissal of these claims, as Plaintiff has not exhausted his available administrative remedies. Plaintiff, however, appears to have exhausted one grievance as to his work assignments (BRCI-1003-07) in which he complained that he was not allowed to work in the cafeteria.

     5.    <u>Conditions of Confinement/Food Claims</u>

Plaintiff appears to allege that his Eighth Amendment rights were violated because he did not receive enough food, his food was not adequately nutritious, and he had insufficient time to eat his meals. Defendants contend that Plaintiff fails to show that his Eighth Amendment rights were violated as a nutritionist ensures that the food served met the inmates' nutritional needs; if an inmate has a specific medical concern it is taken into consideration with regard to the food the inmate is served; the food served is not rotten, is properly cooked, and is served in a sanitary manner; the cafeteria is inspected to ensure that it is clean and maintained in a sanitary manner; and the cafeteria has never failed its yearly inspection by the South Carolina Department of Health and Environmental Control ("DHEC"). Defendants further argue that Plaintiff has not shown that he suffered any serious or significant physical or emotional injury resulting from the allegedly deficient or inadequate food service.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal

civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. Rhodes v. Chapman, 452 U.S. 337 (1981). Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949 (1993). The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825 (1994). A plaintiff must produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment on a prison living conditions claim. Strickler, 989 F.2d at 1380-81.

Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, Owens v. French, 479 U.S. 817 (1986). Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. Divers v. Dep't of Corrs., 921 F.2d 191, 196 (8th Cir. 1990); see also Madyun v. Thompson, 657 F.2d 868, 874-75 (7th Cir. 1981)(allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); Hoitt v. Vitek, 497 F.2d 598, 601 (1st Cir. 1974)(prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); Prophete v.

Gilless, 869 F. Supp. 537 (W.D. Tenn. 1994)(food which was cold by the time it was served did not constitute cruel and unusual punishment). Further, "occasional incidents of a foreign object contained in food, while regrettable, does not present a question of constitutional proportion." Lunsford v. Reynolds, 376 F. Supp. 526, 528 (W.D.Va. 1974); see also Ham v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986); Sinclair v. Henderson, 331 F. Supp. 1123 (E.D. La. 1971).

Plaintiff failed to exhaust his available administrative remedies as to any food or conditions of confinement claims. He also fails to show that he suffered any serious or significant physical or emotional injury as a result of his food. Plaintiff's medical records fail to indicate any such serious injury from the food Plaintiff was served. See Defendants' Motion for Summary Judgment, Ex. 10 (Plaintiff's Medical Records). Dr. J. Glenn Alewine, a physician for SCDC, states that he has reviewed Plaintiff's medical records and he does not believe that Plaintiff was suffering from an ailment, injury, or condition while he was confined that presented an immediate risk of serious harm to Plaintiff's health or well-being. Alewine Aff.

Plaintiff also fails to show that subjectively the prison officials acted with a sufficiently culpable state of mind. Defendants submitted an affidavit from Evelyn Barber, the Food Service Manager at BRCI. Barber states that SCDC has a nutritionist on staff who approves the meals that are served to all inmates (including the HIV/AIDS inmates) at BRCI and ensures that the food served meets the inmates' nutritional needs. She further states that the food served is not spoiled, the cafeteria is clean and maintained in a sanitary manner, and the cafeteria has never failed any inspections by DHEC while she has been in charge. Barber Aff. Allen Collins, the Food Service Manager for BRCI, states that SCDC has a nutritionist on staff who approves of meals that are served

to inmates, including the HIV/AIDS inmates at BRCI; the food served at the cafeteria is neither spoiled nor rotten; the food is properly and fully cooked; inmates are served an adequate amount of food; cookware, cooking and serving equipment, utensils, plates, bowl, and glasses are thoroughly cleaned daily and are maintained in a sanitary manner; and the cafeteria has never failed a DHEC inspection. Collins Aff. Barber and Collins also state that he did not rush inmates out before they had sufficient time to eat their meals. Collins and Barber Affs. Further, courts have found that the fact that an inmate is given only a minimal amount of time to eat his meals does not rise to the level of a violation of the Eighth Amendment. See, e.g., Zin v. Chief Med. Officer, Nos. C 94-0242 EFL, C-94-0484 EFL, C-94-0485 EFL, C-94-0572 EFL, C-94-0733 EFL, C-94-1297 EFL, 1994 WL 224841 (N.D.Cal. May 9, 1994)(finding fact that inmates are allowed only minimal amount of time to eat meals does not rise to level of violation of Eighth Amendment; court will not interfere with prison's discretion in matters relating to tantamount of time prisoners have to eat their meals); Ware v. Garnett, No. 04-DV-925-WDS, 2008 WL 895670, at *9 (S.D.Ill. May 31, 2008)("While it might be more enjoyable to linger over a meal, prisons are not required to provide 'the amenities, conveniences and services of a good hotel.'"); Bass v. Jordan, No. 07-25-JJF, 2007 WL 4246442 (D.Del Nov. 29, 2007)(finding inmate's complaint about insufficient time to eat his food to be de minimis deprivation generally not rising to level Eighth Amendment violation).

6.    Medical Claims

Plaintiff alleges that SCDC's HIV/AIDS inmate housing policy is violative of his rights because he is receiving inadequate or insufficient medical care.[5] Defendants contend that

---

[5]Plaintiff also appears to be attempting to assert claims on behalf of other inmates, which he cannot do. See Laird v. Tatum, 408 U.S. 1 (1972); see also Valley Forge Christian Coll. v.

(continued...)

Plaintiff fails to show that Defendants knew of an objectively serious medical condition or need of Plaintiff that they disregarded, and Plaintiff has not shown that he sustained any serious or significant physical or emotional injury resulting from the alleged deficient or inadequate medical care.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
>            \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, <u>supra</u>, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

---

[5](...continued)

<u>Americans United for Separation of Church & State</u>, 454 U.S. 464, 482 (1982); <u>Flast v. Cohen</u>, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); <u>Lake Carriers Ass'n v. MacMullan</u>, 406 U.S. 498, 506 (1972); <u>Hummer v. Dalton</u>, 657 F.2d 621, 625-626 (4th Cir. 1981 )(a prisoner cannot act as a "knight-errant" for others). <u>Cf.</u> <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)(a <u>pro se</u> prisoner cannot be an advocate for others in a class action).

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

As discussed above, Plaintiff failed to exhaust his available administrative remedies as to any claims about his medical care. Plaintiff also fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Defendants have provided copies of Plaintiff's medical records indicating that Plaintiff regularly received medical care for his complaints. Dr. Alewine states that Plaintiff's inmate medical records indicate he received proper assessment, attention, care, and treatment for his medical complaints and needs while he was within the SCDC. Alewine Aff. Plaintiff appears to allege that at one point in time he was not getting his medications in a timely manner. He, however, has not shown that any delay was serious or life threatening.

7.   Jobs/Work Assignments

Plaintiff alleges that his constitutional rights were violated because he was not allowed to work in the cafeteria which would have allowed him to supplement the food he received and to receive work credits. He fails to show that his constitutional rights were violated. Prisoners have no entitlement to a job at a certain pay level, or even to any job. See Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected

by most inmates). Although a prisoner may have due process rights as to good-time credits which are taken away from him, the opportunity to earn good-time or work credits is not a constitutionally established liberty interest. Wolff v. McDonnell, 418 U.S. 539, 557 (1974); see Sandin v. Conner, 515 U.S. 472 (1995). Additionally, Plaintiff has presented nothing to show that inmates who work in the cafeteria are entitled to receive more or different food.

    8.   Canteen Prices

        Plaintiff alleges that Defendants engaged in price gouging of items sold at the BRCI Canteen, preventing him from supplementing his diet. Defendants contend that Plaintiff fails to establish a constitutional claim because there is no constitutional right to competitively priced canteen items. They also contend that, to the extent that Plaintiff is asserting a violation of the Sherman Anti-Trust Act, his claim fails as antitrust laws do not apply to the operation of state agencies.

        Plaintiff fails to establish a constitutional claim as to canteen prices. Canteen access is also not a protected liberty interest. See, e.g., Madison v. Parker, 104 F.3d 765, 768 (5th Cir.1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); Bennett v. Cannon, No. 2:05-2634-GRA, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all"). To the extent that Plaintiff is alleging a violation of the Sherman Anti-Trust Act, his claim also fails. The antitrust laws do not apply to the operation of state agencies. See Dehoney v. South Carolina Dep't of Corr., Nos. 0:94-3169-21BD, 3:94-3169-21BD, 1995 WL 842006 (D.S.C. July 31, 1995), aff'd, 72 F.3d 126 (4th Cir. 1995).

9. <u>Custody Classification/Prison Placement</u>

Plaintiff appears to allege that his constitutional rights were violated based on his custody classification or housing placement per the SCDC HIV/AIDS inmate housing policy. As discussed above, Plaintiff failed to exhaust his available administrative remedies as to any such claims. Further, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. at 483-85; <u>see</u> <u>Backey v. South Carolina Dep't. of Corrections</u>, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); <u>Joseph v. Gillespie</u>, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); <u>Reffritt v. Nixon</u>, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), <u>aff'd</u>, 121 F.3d 699 (4th Cir. 1997).

10. <u>Equal Protection</u>

Plaintiff appears to allege that he is being treated differently than inmates who are not HIV-positive. Defendants contend that Plaintiff fails to show that his rights under the Equal Protection Clause were violated.

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional

18

or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff has not exhausted his administrative remedies as to any equal protection claim. Further, other courts have found that because inmates with HIV/AIDS are not similarly situated to other prisoners, the Equal Protection Clause is not violated when inmates are segregated because of their HIV-status. See Werts v. Greenwood County Detention Center, No. 4:08-1852-TLW-TER, 2008 WL 5378251 (D.S.C. Dec. 23, 2008); Farmer v. Hawk, No. 94-CV2274(GK), 1996 WL 525321, at *10 (D.D.C. September 5, 1996) citing Nolley v. County of Erie, 776 F.Supp. 715, 739 (W.D.N.Y.1991)(an HIV positive inmate carrying a contagious disease is not similarly situated to other inmates). Even if Plaintiff can show that he is similarly situated, he has not shown that any unequal treatment he experienced is due to "intentional or purposeful discrimination." Further, he has not shown that SCDC's policies were not reasonably related to some legitimate penological purpose.

11. <u>Conspiracy</u>

Plaintiff appears to allege that Defendants conspired to set the prices high at the BRCI canteen to make up for lost revenues from cigarette sales (which are no longer allowed). He claims

that as a result of the high prices he was unable to afford food to supplement the food SCDC provided, he lost weight, and he suffered mental distress.

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). A plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. Id. To survive a summary judgment motion, a plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." Id. A plaintiff's allegation must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. Id. at 422. The plaintiff must show that the defendants possessed an intent to commit an unlawful objective. Id.

Here, Plaintiff has presented nothing other than his own speculation that there was a conspiracy. He fails to show a meeting of the minds amongst Defendants to deprive him of his constitutional rights. Additionally, he fails to show an underlying constitutional deprivation as he has not shown a constitutional right to canteen items or privileges.[6]

---

[6]To the extent that Plaintiff is alleging that Defendants did not follow SCDC policies or procedures, such claims, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

12. <u>Emotional Distress</u>

Plaintiff claims that he should be allowed to recover for emotional injury. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. <u>See</u> <u>Grandstaff v. City of Borger</u>, 767 F.2d 161 (5th Cir. 1985), <u>cert.</u> <u>denied</u>, 480 U.S. 916 (1987); and <u>Rodriguez v. Comas</u>, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[7]

42 U.S.C. § 1997e(e).

Plaintiff appears to argue that he can now recover for emotional injury because he is no longer in prison. This argument fails, however, as Plaintiff brought this claim while he was in prison. Further, Plaintiff fails to show that any of his constitutional or statutory rights were violated such that he could recover for an emotional injury.

13. <u>Immunity</u>

Defendants appear to contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of

---

[7]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. <u>Siglar v. Hightower</u>, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); <u>see also</u> <u>Zehner v. Trigg</u>, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), <u>aff'd</u>, 133 F.3d 459 (7th Cir. 1997).

the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

22

<u>Id.</u> at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert.</u> <u>denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

14. <u>ADA/Rehabilitation Act</u>

Plaintiff appears to allege that Defendants violated his rights under Title II of the ADA and under the RA because they would not allow him to have a job in the cafeteria and he was segregated from the general population. Defendants contend that Plaintiff's claims fail because individual defendants cannot be held liable under the ADA or the RA. They also argue that Plaintiff fails to create any issue as to whether Defendants violated the ADA or the RA as he has failed to produce any evidence or properly allege that he was otherwise qualified to receive certain services/housing or that he was denied such services within the SCDC and BRCI.

Title II of the ADA provides only for a remedy for discrimination by a "public entity." 42 U.S.C. § 12132. Because the same standards apply to the ADA and the RA, neither act permits suit against an individual defendant who is not an employer. <u>See</u> <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d

23

462, 472 (4th Cir.1999)(because ADA incorporates relevant provisions of Title VII, ADA does not permit suits against individual defendants); <u>McNulty v. Board of Educ. of Calvert County</u>, No. Civ. A. DKC 2003-2520, 2004 WL 1554401, at *6 (D.Md. July 8, 2004)("As with Title II of the ADA, Section 504 of the Rehabilitation Act 'does not permit actions against persons in their individual capacities.'")(quoting <u>Baird</u>, 192 F.3d at 472); <u>Smith v. Henderson</u>, No. 5:00-CV-572-BO(3), 2001 WL 34702456, at *3 (E.D.N.C. Aug. 9, 2001)(ruling that Postmaster General is "only proper defendant in [postal employee's disability-related] action, as [provision of Title VII declaring agency heads as sole proper defendant for employment claims against federal agencies] applies to claims brought under ... the Rehabilitation Act ... [and that,] [t]herefore, Plaintiff's Rehabilitation Act ... claims against all defendants, excluding [the Postmaster General], must be dismissed" (internal citations omitted)).  Thus Plaintiff's ADA and RA claims, which are brought against only individuals, should be dismissed.

    15.   <u>State Law Claims</u>

        Defendants contend that any state law claims are barred pursuant to the South Carolina Tort Claims Act.  As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

**MOTION TO AMEND**

        With his January 27, 2012 response, Plaintiff submitted what appears to be a motion to amend and a proposed amended complaint.  As noted above, Plaintiff previously amended his complaint on February 10, 2011.  Plaintiff attempted to amend his complaint again on September 30, 2011.  Doc.

94. The motion was denied because Plaintiff failed to submit a proposed amended complaint and amendment at that late date would be prejudicial to Defendants. See Doc. 105.

Plaintiff filed his motion to amend more than twenty-one days after the answer (Defendants answered on July 5, 2011). Although Rule 15[8] mandates that leave to amend pleadings should be granted freely where justice requires, "[m]otions to amend are committed to the discretion of the trial court." Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). Delay alone is not sufficient reason to deny leave to amend, but must be accompanied by prejudice, bad faith, or futility. See Foman v. Davis, 371 U.S. 178 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir.), modified, 856 F.2d 111 (9th Cir. 1988)("if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment would be futile").

Plaintiff's motion, which was not filed until well after Defendants filed a motion for summary judgment, appears to have been unduly delayed. Allowing amendment at this late date would prejudice Defendants. Additionally, Plaintiff's attempt to amend would be futile. He appears to be attempting to add SCDC as a Defendant. To the extent that Plaintiff is attempting to assert claims

---

[8]Rule 15 provides, in part:
(1) ***Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course within:
     (A) 21 days after serving it, or
     (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
(2) ***Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
Fed. R. Civ. P. 15(a).

under § 1983 against SCDC, his claims would be barred by Eleventh Amendment immunity. To the extent he is attempting to add claims against SCDC under the ADA and the RA, his claims would be barred by the applicable statute of limitations.[9]  **Plaintiff's motion to amend/correct (Doc. 112) is, therefore, denied**.

**MOTION FOR A VOLUNTARY NON-SUIT**

In his September 30, 2011, motion to amend, Plaintiff requested that if his motion to amend was denied he be granted a "voluntary non-suit."  In the December 20, 2011 Order (Doc. 105), the undersigned noted that this motion appears to be moot, as Plaintiff later filed a motion for partial summary judgment.  To the extent that Plaintiff is arguing that this motion is not moot and he is still asserting it (Doc. 94), it is recommended that the motion be denied.

Plaintiff appears to request that this action be dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) if he is not allowed to amend his complaint.  Defendants oppose such a dismissal (see Doc. 96) as unfairly prejudicial as they have already filed a motion for summary judgment, which included expending a significant amount of time, expenses, and resources in preparation for

---

[9]In a case involving disability access to a South Carolina Department of Motor Vehicles ("DMV") office, this court found that the one-year limitations from the South Carolina Human Affairs Law applied to plaintiffs' RA claim. Childers v. County of York South Carolina, No. 0:06–897, 2008 WL 552879, at *11 (D.S.C. Feb.26, 2008); see also Vandeusen v. Adams, No. 3:06–1092, 2007 WL 2891502 (D.S.C. July 31, 2007) (applying one-year statute of limitations to Rehabilitation Act claim based on lack of disability access at DMV office).  Additionally, this court has previously applied a 180–day limitations period to ADA claims based on 28 C.F.R. § 35.170(b). See Childers, 2008 WL 552879, at * 10.  Plaintiff alleges that he informed Defendant Diehl on August 13, 2007 of the alleged violations. Plaintiff also knew or should have known about his housing situation at that time or earlier.  Proposed AC at 7, Paras. 48 and 57.  (Doc. 112).  Thus, any attempt to amend would be untimely as Plaintiff knew or should have known of his claim on August 13, 2007, such that the statute of limitations, whether it is 180 days or one year, would have run well before Plaintiff filed this action on November 30, 2010.

the motion. They also argue that granting Plaintiff's motion would cause undue delay and be contrary to the principles of judicial economy.

Under Rule 41(a)(2), FRCP, a district court may dismiss an action "at the plaintiff's request only by court order, on terms that the court considers proper." Rule 41(a)(2), FRCP. "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d at 1273. "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." Id. "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). The Fourth Circuit, however, has found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery. See, e.g., Miller v. Terramite Corp., 114 F. App'x 536, 540 (4th Cir. 2004)(affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed well after discovery had closed and a dispositive order was imminent); Francis v. Ingles, 1 F. App'x 152, 154 (4th Cir. 2001)(affirming district court's denial of motion to dismiss without prejudice because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and "the motivation for the motion appeared to be to circumvent" a discovery ruling, which counsel could have avoided "by deposing the witness within the discovery period"); Skinner v. First Am. Bank of Va., No. 93-2493, 1995 WL 507264, at *2-3 (4th Cir. May 3, 1995)(stating that "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and noting that granting a motion to dismiss is

not required to allow a party to "avoid an adverse ruling in federal court"); Sullivan v. Westinghouse Elec. Corp., Nos. 87-3576, 87-3577, 1988 WL 54059, at *2 (4th Cir. May 19, 1988)("Given the advanced stage of the proceedings, the district court's denial of [the plaintiff's] motion was not an abuse of discretion."). Four factors that the court can consider in deciding a motion to voluntarily dismiss an action are: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Gross v. Spies, Nos. 96-2146, 96-2203, 96-2150, 96-2149, 96-2147, 96-2204, 1998 WL 8006, at *5 (4th Cir. Jan.13, 1998).

Here, Defendants would be greatly prejudiced because they have submitted a motion for summary judgment. Plaintiff delayed filing his motion until well after the time period for discovery ended and more than a month after Defendants filed their motion for summary judgment. Defendants contend that they have expended a significant amount of time, expenses, and resources. Attached to their motion for summary judgment, Defendants have included Plaintiff's medical records, copies of his grievances, and affidavits with supporting materials from a number of Defendants and other SCDC employees. Additionally, Plaintiff has given insufficient explanation for the need for dismissal.

## **CONCLUSION**

**IT IS ORDERED** that Plaintiff's motions to amend and for TRO/preliminary injunction (Docs. 67 and 79) are **granted, in part,** as to Plaintiff's request to amend his May 18, 2011 motion for a TRO/preliminary injunction. **IT IS FURTHER ORDERED** that Plaintiff's motion to amend (Doc. 112) is **denied**. **It is recommended** that Plaintiff's May 18, 2011 motion for a

TRO/preliminary injunction (Doc. 37) be **denied**, and Plaintiff's motions to amend and for TRO/preliminary injunction (Docs. 67 and 79) be **denied, in part,** as to his request for TROs/preliminary injunctions**. It is also recommended** that Defendants' motion for summary judgment (Doc. 80) and supplemental motion for summary judgment (Doc. 101) be **granted,** and Plaintiff's motion for partial summary judgment (Doc. 104) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

February 16, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).